Good morning, and may it please the Court. Robert Ellman for the United States. Your Honors, forfeiture of criminal proceeds is mandatory under the applicable statutes, and in this case, the District Court committed error when it refused to impose a criminal forfeiture money judgment under those statutes. After the opening brief was filed, this Court reversed the same judge for the same ruling under indistinguishable facts in the Companion Newman and Tedesco cases. The defendant makes little effort to grapple with the Newman decision or the pre-Newman cases, for that matter, in the answering brief, and attempts only to avoid them under the Teague Doctrine. The Teague Doctrine, however, is clearly inapplicable. And that leaves us with only one ground cited by the defendant for affirming the District Court that was not disposed of in its entirety in the Newman opinion, and that's the Eighth Amendment Excessive Fines Clause argument. But the defendant cannot prevail on that basis for at least four reasons. First, the defendant explicitly agreed to the forfeiture judgment amount in the plea agreement, and I'll cite pages 54 and 57 of the excerpts. And beyond that ---- Pre-sentence report had a different figure. What is that, Your Honor? The pre-sentence report had a figure. It's $860,000 or something like that. $689,000, Your Honor. Correct. But that is the loss amount. It's not the forfeiture proceeds amount. Is there anything except for the stipulation that supports the forfeiture amount? Your Honor, there's no evidence of the forfeiture amount in the record, but that's because the parties reached agreement in the plea agreement. Okay. Are you arguing that we should do what was done in Newman and remand the case for a determination of the forfeiture amount at this point? Is that your position? Almost, Your Honor. And when we moved to remand, it was for the specific ruling in Newman, which I think is stated just slightly differently than what Your Honor just put. And tell me why it's different. Because the forfeiture judgment would be signed by the district judge unless the court actually had reason to doubt that the amount of the proceeds was at least a million dollars. So if the court had reservations about that, then it could take evidence or conduct a hearing or do whatever it felt was necessary under the circumstances to establish that. Exactly. What Johnson did here was recruit straw buyers and then do what? The straw buyers, and they also created fake documents to secure bank loans, to purchase houses, and in this case, uniquely among our other asset forfeiture cases we've been litigating, they also purchased, I think, a $400,000 motor home. The defendants over the course of about three years ago So the loans went to the proceeds of the loans went to them? They did, Your Honor, for purposes of purchasing these items, yes. The Newman All right. They did essentially what they did in the Tedesco case, which is the Newman companion case. They created fake documents, applied for loans, induced the lenders to part with those funds, creating the proceeds amounts, because they're the actual amounts of the loans, and then those were applied to get the houses that the, you know, straw buyers were supposedly going to live in, but in fact weren't. So I would have to go outside the record to elaborate any further than that, but that was the scheme. And there was no dispute in district court about the amount of the proceeds at all. In fact, you know, the defendant not only stipulated to it in the plea agreement, but had no objections to it at sentencing. And when the district court asked the defendant about that in discussing the forfeiture, and I cite you to page 46 of the excerpts, the defendant said he had no grounds upon which to object to the forfeiture, and it was for that reason. And again, the reason there's no evidence specifically in the record about the loan amounts over the conspiracy is because there was the stipulation in the plea agreement. All right. So you're talking about the Eighth Amendment argument, but your position, your fundamental position, as I understand it, is that the amount of the here, the amount of the proceeds went directly to him and was a direct measure of what he profited. No, the proceeds are not the profits, Your Honor. Well, I understand that you say that, and I have real problems with that in the forfeiture context, but in this context, it was that. Is that not right? That's why I was asking the question. Well, they're not the profits, Your Honor. So I think the answer to your question is no, because they're not defined that way under the statute or interpreted that way. I understand that's your position. I understand that we may have said that sort of in passing, but it seems very questionable to me. But in this instance, he got that money and took it for himself. Is that right? No, Your Honor. He didn't receive the money. That's why I was asking the question. Okay. Then what happened? The proceeds amounts that were obtained, they got the houses. And again, I'd have to go outside the record a little bit to elaborate, but it was to get control of those proceeds and divert them, essentially. All right? Nobody took possession of those. Those buyers didn't move into those houses as they represented they would do. They didn't have the jobs and the income necessary to service the payments. I'm asking about the defendant. Was this all on his behalf that he was doing this, or was he – in the other case that's going to be argued later, my understanding is that the person involved was essentially a middleman who made a commission on the funds that were at issue, but only on the money that was being laundered, but was simply a – so far as he ever had his hands on it, he was a pass-through. That's not true here. Am I right about that or not? Correct, Your Honor. But the defendant didn't get all of the proceeds. He got a portion of the proceeds. Okay. I guess you're suggesting that to the extent there's any issue on that, that that's why you want it to be determined by the district court? That's correct, Your Honor, but it's – again, it's not the amount that the defendant received that the control was done. All right. It's the amount obtained by the district court. Maybe you can tell me why that is under a forfeiture statute. I understand that you can cite me some cases, but how could it be under a forfeiture statute where the question – my understanding is that the whole historical idea is that you should not retain ill-gotten proceeds. And I understand the point about, well, if you spent them, that's something different. But if you – if they were never meant to be yours, they were never yours, how can that be forfeited? You know, it's – I understand why it counts as a loss measure for other purposes, but for forfeiture, why? Because the statute defines it as all property obtained directly or indirectly and this is property obtained by the co-conspirators, okay, indirectly and to some extent directly. It depends what obtained means, doesn't it? Pardon me? Doesn't it depend what obtained means? Yes, but it doesn't mean received. It means obtained. And again, you know, I think this is foreclosed under Newman because of the way they defined it. They defined the proceeds as the amount of the loans. There's no issue there. I mean, the issue – the Desko issue was that he says, I gave some of it back. But it wasn't that I never – it was never mine to begin with. It was somebody else's. Well, actually, Your Honor, I think it was and I think it's the only reason. Well, insofar as it appears in the opinion, that's the only question. All right. Counsel, if I could ask you a question. If I understand correctly, the government's position is they want us to vacate the sentence and remand? They want to vacate the portion of the order that refuses to impose forfeiture judgment, Your Honor, yes, and then remand for entry of the forfeiture order. Well, ordinarily, we don't vacate one part of a sentence. We vacate the sentence and let the district judges then make the correction and enter the sentence again. Is there some reason why you're more limited here? No, there really is not, Your Honor. No one's appealing any other aspect of the sentence. That's the point that you want to get as a vacation. And direction to follow Newman, is that the point? That's correct, Your Honor. That is what we're asking. So as long as that happens, you're satisfied that the district court will be able to work it out? Certainly. And we won't have to see the case again? That's correct, Your Honor. And, in fact, the district court has worked it out in the other cases to date. So I interrupted you after your first point. That was nine minutes ago, Your Honor. I do. I'd like to move on just briefly. In this case, the only aspect that was not expressly addressed in Newman is the Eighth Amendment. And this is a case where the defendant expressly waived any Eighth Amendment objections. And I cite you to page 58 of the excerpts of record, where he expressly says so in the plea agreement. In any event, Your Honor, even if you could overlook the waiver of the Eighth Amendment under the 22 Santa Barbara Drive case, forfeiture of criminal proceeds as a matter of law cannot be constitutionally excessive under the Eighth Amendment. And, again, there's no attempt to deal with that line of cases. That's also consistent. It can't be under the excessive fines provision. That's correct, Your Honor. And the test is basically the same, so what difference does it make? I'm sorry. I didn't hear you. My understanding is that so far as we know what the tests are, they're basically the same. They are. Under Badge of Cajun, it's the gross disproportionality test. Right. So it doesn't make it so that's just a non-issue, just, I mean, he said through all words, but so what? Well, if you're I mean, I understand there's a waiver problem. But aside from the waiver problem, okay, it's not the Eighth Amendment, it's excessive fines. Let's do excessive fines. Well, the excessive fines clause test is gross disproportionality. And under 22 Santa Barbara Drive, as a matter of law, if the amount in question is the criminal proceeds, it's necessarily proportionate. It can never be excessive. All right. But that's why we're back to my question, because if the proceeds are the money that you actually got on your own behalf, that's one thing. But if you're a drug dealer who's going to get 1 percent of the cost of the price of whatever you're selling, and the other 99 percent is going over your head, I don't know why that couldn't be an excessive fines problem if you're supposed to be giving forfeiting a million dollars that you never had in any realistic sense. Well, Your Honor, I can point you to – I think this may aid the Court in this regard. In all of the asset forfeiture cases when you're dealing with co-defendants, they become jointly and severally liable for the forfeiture amount. So the government couldn't seek and obtain more than the amount of the proceeds. So that I – perhaps that answers the question. Well, it doesn't. I mean, suppose one guy happens to be independently wealthy. He has a million dollars and the other people don't. But still, he – in this criminal enterprise, he was a peon. Well, but the proceeds are then disgorged, and the purposes of forfeiture are served. What I'm saying is, in the cases which said that the proceeds can't be an excessive fine, did you have those kinds of facts? Over the proceeds, well, more like profits, the money they actually got. Well, again, that line is foreclosed, and that's the Santos distinction. But unless you're talking about a merger problem, then we're not talking about net proceeds that defines it. We're talking about gross proceeds under the Wilkes case and Van Alstyne from this court. So even if you attempt to follow that to its conclusion – That, again, was for a completely different reason. I'm sorry, Your Honor? It was a different statute for a different reason. All right. Thank you, counsel. We'll give you some time for a bottle. Thank you. Good morning, Your Honor. My colleague, Mr. Elman, argues that the Newman case controls, and I think that my case is distinguishable. Judge Mann made very clear that he did not believe that Mr. Johnson had received anything, not just some of the proceeds. I mean, what he stated very clearly in rejecting the government's forfeiture – and he had preliminarily signed an order of forfeiture at the time of the plea. He stated on the record, the government has completely failed to introduce any evidence of property that the defendant has obtained illegal proceeds.  And he did not get any, according to the judge's analysis of the facts at the time of the sentencing. Now, the plea memo, of course, I stipulated. The judge was smarter than me. He looked at the facts. He thought that it was not grounds for a forfeiture.  And I think that the court, in stating the facts here, is arguing generically what happened in the straw buyers. The facts of this case, if the Court wants me to go outside the record, I can go into the facts, but I don't go outside the record. Mr. Elman hinted outside of the record of what may have happened. Well, sure. I think we can. Go ahead. But I believe that there is no clear evidence that the defendant received anything. And if we remand it. Well, so if we have a remand, I suppose you can all argue that. I mean, the problem was that Judge Mahan seemed to be saying, as he said in the other cases, that this was all discretionary with him and he wasn't going to do it. And Newman said it's not discretionary, and that seems to be clear under the statute. It's pretty definite. And all we're doing then is sending it back, and you can tell to Judge Mahan. But the only evidence that we have is the stipulation. Right. But if you stipulated one, why do you need anything more? I mean, you agreed to it. I agreed to it in error. Well. And the Court is, of course, familiar with the process of plea bargaining when your client's sitting in jail and wants to get out, or your client's facing a lengthy jail sentence. I'll take the blame for that. He did. Well, sure, but I mean, you don't need to. Here's what it says. Defendant knowingly and voluntarily agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the in personam criminal forfeiture money judgment of $1 million.  Well, you better agree to the judgment. All right. When you say there's no evidence, why, if I were in the government's shoes, would I put on evidence to something you stipulated? You can't fault them for not having evidence, can you? Well, you know, the case that was just heard before, the Court was talking about waiver, and that it's somewhat the one of the checks and balances we have in the system is a judge has to step in there and make sure that when the attorneys don't step up, when the attorneys don't act right to protect on waivers, the Federal judge is supposed to step in and say, wait a minute, that's what Judge Mann did here. He said, no, there's no grounds for a forfeiture here. Is that what he said? Or he said, I have discretion not to do it, I'm not going to do it? No, he said very specifically there wasn't any evidence to support it. It wasn't that, no, I'm using my discretion. He said, I'm not going to do it. And besides that, it's unjust. He said both. Well, what he said was that he didn't want to harness this person with this very large forfeiture. After he said there wasn't any evidence. He said both. But, yeah, well, as long as there's a stipulation in the file, the government is relieved of providing evidence. He was saying that he has discretion. Newman says he doesn't. So if we send it back down for him to look at it appropriately under Newman, what's wrong with that? Nothing's wrong with that. And we can do that. And he can do the same thing again. But I would ask that we put you on your proof and the government on its proof. But then that requires more legal work on the government's part, more legal work on the defendant's part. And maybe an evidentiary hearing, maybe not. But the defendant would have to be involved in that, possibly. Isn't that what resentencing is all about? Well. I mean, this is what you want, right? What I want is that Judge Mann's order that the forfeiture not be granted be upheld. Yeah. But you can't do that under Newman. Newman says it's mandatory. Newman says that was wrong as a matter of law. But I can ask the Court to consider that Newman has an exception in his case when the Eighth Amendment comes into play. And if there is not a nexus that connects the defendant's actions to show that the defendant is connected to his criminal activity, I think the Eighth Amendment applies. How do you get around the problem that you waive the Eighth Amendment? Your client waived the Eighth Amendment in a trial court. Now you want to use the Eighth Amendment to reverse what happened. I think the waiver was invalid. I think it's a constitutional issue. How is it invalid? You can waive a constitutional right. It occurs all the time. I think we – yeah. But I think the Court was just saying that those kind of waivers are not valid when the defendant is connected to his criminal activity. And that's when you don't know what you're doing. But here you knew what you were doing. You said you agreed to pay a million dollars and you waived an Eighth Amendment claim. I think under – I'll just say that I will not make that mistake again, but I think that my client should not be the one that's punished. Well, essentially, Newman actually gives you that opening, you know, somewhat unusually. So if you got the remand, you have the opening. But possibly I might lose on the remand, and if I win here, then I don't have to do it again. Well, we don't usually – we don't usually shortcut district court judges by issues that haven't been before them and then reverse them or affirm them on that. There's a process that we're involved. Once you've waived the Eighth Amendment, we have to take that as the record. We can't undo records. Well, I mean, this is a matter of, you know, I think a disproportionate punishment. We're talking about a million dollars plus a restitution of $689,000, which is $1,689,000 over a – It may be that – it may be that he – Or an indigent defendant. It may be that he thought that he had discretion. He doesn't. He knows that under Newman. And there was no Eighth Amendment question before him because it had been waived. Now, I don't know how you reverse a district judge not applying the Eighth Amendment when it's been waived. I believe the judge was familiar with the Eighth Amendment and impliedly based his decision on that. I – well, he didn't say that. He said that he based it upon that he thought he had – that it wasn't mandatory. He didn't base it upon the Eighth Amendment at all. Well, now we have Newman. It says it's mandatory. So we've had a bunch of these cases, and they're all going back. The court could choose to overrule Newman as an alternative. No, we can't. No, it can't. We're lacking a few judges today. The Croci case, which was a well-reasoned decision out of, I believe it was Pennsylvania. I'm not sure. It seemed to have a good reasoning, and the – I would direct the Court to that. I think that the facts of this case are a good factual basis for the Court to reconsider the harshness of the Newman decision. That's a – No, we need to go on bond for that. All right. I will submit it with that. All right. Very good. Put two minutes on the clock. Two minutes. Thank you, Your Honor, and I appreciate the time. I only want to address one point. Mr. Jackson has quoted a statement that appears at page 15 of the excerpts to the effect that the government had completely failed to introduce any evidence of property that the defendant obtained with illegal proceeds. That language also appeared in the order that was reversed in the first case. And I would argue that there is no evidence of property that's not been identified in the Newman and Tedesco cases. And what Judge Mahang meant was that he has it, that there's – he hasn't – they haven't identified any existing property. We understand that. Well, actually, Your Honor, I disagree with that. It appears to be a finding that the government introduced no evidence of tracing under rule 32.2E. Right. That's right. That's what I meant. Okay. And that's an inapplicable rule. I disagree with everything I say, but that is exactly what I meant. That – that tracing requirement is inapplicable in this case because the government sought a criminal forfeiture money judgment in the first instance. And that is disposed of in the Newman case at pages 1242 and 43. The tracing requirements are inapplicable here. So that was the only insufficiency found by the district court. There was no insufficiency with respect to the amount of the proceeds, nor was there any dispute by the defendant that the proceeds amount was at least a million dollars. Okay. Thank you, Your Honor. Thank you for your arguments. The case is currently submitted for decision.
judges: Wallace, Thomas, Berzon